```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
ALONZO JOHNSON,                                                   :
                                                                  :
                                Plaintiff,                        :    14-CV-428 (JMF)
                                                                  :
               -v-                                                :    OPINION AND ORDER
                                                                  :
MORRISON & FOERSTER LLP, et al.,                                  :
                                                                  :
                                Defendants.                       :
                                                                  :
------------------------------------------------------------------X
```

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 02/26/2015
```

JESSE M. FURMAN, United States District Judge:

Plaintiff Alonzo Johnson ("Plaintiff") brings this action against his former employer, the law firm Morrison & Foerster LLP ("Morrison & Foerster"), and several of his former supervisors and co-workers, alleging discrimination on the basis of his age, race, and gender, a hostile work environment, and retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*; and the New York City Human Rights Law ("NYCHRL"), N.Y. City Admin. Code § 8-101 *et seq.*  Defendants now move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Plaintiff's complaint.  For the reasons stated below, Defendants' motion is granted, and Johnson's complaint is dismissed.

## BACKGROUND

The following facts, taken from the Complaint and exhibits attached thereto, are presumed true for the purposes of this motion.  *See Karmely v. Wertheimer*, 737 F.3d 197, 199 (2d Cir. 2013).

Plaintiff — an African-American male with fifteen years of work experience — was employed by Morrison & Foerster as a paralegal. (Compl. (Docket No. 1) 3, 7).[1] Plaintiff's background was in intellectual property law, but in 2013, he was asked to spend three to six months working for the law firm's State and Local Tax ("SALT") group. (*Id.* at 3). Defendant April K. Jenkins, who served as his immediate supervisor, told him that the SALT group "loved" his work and appreciated having him in the group. (*Id.*). While working for the SALT group, however, "it was clear that [Plaintiff's] race, gender, and/or age was a problem for some of the attorneys." (*Id.* at 8). Specifically, Defendant Nicole L. Johnson (presumably, no relation to Plaintiff) "appeared aghast" when Plaintiff told her his age and his number of children, and did not refer many assignments to Plaintiff after that conversation; Defendant Craig B. Fields "always seemed nervous in [Plaintiff's] presence"; and Defendant Hollis L. Hyans did not request his assistance directly, but rather went through Jenkins — a practice he asserts would not have occurred with a younger, non-African-American paralegal. (*Id.* at 7-8).

Additionally, when Plaintiff was first assigned to the SALT group, he was tasked with convincing the group's attorneys to transition from paper files to electronic files; he attributes the significant resistance he encountered in that task to the fact that, as an "experienced, 45+, male, African-American paralegal," his "judgment and recommendations were not received well and resulted in little trust" by and from his co-workers. (*Id.* at 7). Plaintiff was also not invited to a SALT attorney's farewell party, and was initially not invited to another SALT function, but admits that he was later forwarded the invitation to the second event; nevertheless, Plaintiff did not go and contends that "some of the other attorneys would not [have been] comfortable with

---

[1] Plaintiff attached several appendices to his Complaint. For the sake of simplicity, references to the Complaint's page numbers are to the page numbers generated by ECF.

2

his presence" at the event, and a non-African-American paralegal "would have been embraced and urged by other SALT group attorneys to attend." (*Id.*).

On August 28, 2013, Plaintiff was asked to either resign or accept a ninety-day probation period based on his "inefficient" performance and "ineffective" communication with SALT attorneys. (*Id.* at 3). He opted for a probation period, during which several conditions were imposed on him. Among others, Plaintiff was required to seek Fields' or Defendant Irwin M. Slomka's approval before working overtime on any SALT matters and was required to work from 10 a.m. to 6 p.m. instead of 10:30 a.m. to 6:30 p.m. (*Id.* at 6). On September 7, 2013 — a Saturday — Plaintiff received a request from a SALT attorney to cite check and create a table of authorities for a brief due that Monday morning. (*Id.*). Because meeting the Monday deadline appeared to be "doable," Plaintiff determined that it was unnecessary to ask for approval to do the overtime work required. (*Id.*).

That Monday, September 9, 2013, Plaintiff found himself stuck in traffic on the George Washington Bridge while on his way to drop his son off at school. (*Id.*). While stuck in traffic, Plaintiff received other requests from SALT attorneys to complete tasks due by 2 p.m. that day, work for which Plaintiff sought help from other paralegals via e-mail. (*Id.*). Plaintiff did not arrive at work until 10:35 a.m. (*Id.*). Three days later, Plaintiff's employment with Morrison & Foerster was terminated, allegedly because of Plaintiff's perceived inefficiency and ineffective communication that had led to his probationary period and — according to Plaintiff — his tardiness that Monday. (*Id.* at 7).

On September 23, 2013, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC"). (*Id.* at 3, 10). On October 22, 2013, the EEOC issued a formal decision indicating that it was declining to further investigate or pursue Plaintiff's claim — which it had

read to allege discrimination on the basis of race, age, and participation in a protected activity — because the information it had was insufficient to conclude that further investigation would likely reveal a violation of federal law.  (*Id*. at 10).  Plaintiff then filed this action on January 23, 2014, alleging that he was discriminated against on the basis of his age, gender, and race through Morrison & Foerster terminating him, failing to promote him, subjecting him to unequal terms and conditions of employment, and retaliating against him.  (*Id.* at 2-3).  Defendants now move to dismiss.  (Docket No. 18).

## LEGAL STANDARDS

In evaluating a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all facts set forth in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *See, e.g.*, *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008).  A claim will survive a Rule 12(b)(6) motion, however, only if the plaintiff alleges facts sufficient "to state a claim for relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  A plaintiff must show "more than a sheer possibility that a defendant acted unlawfully," *id*., and cannot rely on mere "labels and conclusions" to support a claim, *Twombly*, 550 U.S. at 555.  If the plaintiff's pleadings "have not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed."  *Id*. at 570.

*Twombly* and *Iqbal* notwithstanding, the Supreme Court has held that, to survive a motion to dismiss, "a complaint in an employment discrimination lawsuit need not contain specific facts establishing a prima facie case of discrimination under the framework set forth in

4

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Twombly*, 550 U.S. at 569 (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002)). The Second Circuit recently clarified that *Swierkiewicz* has continued viability "as modified by *Twombly* and *Iqbal*," meaning that at the motion to dismiss stage in a discrimination suit, a plaintiff "need not allege facts establishing each element of a prima facie case of discrimination," but the complaint "must at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible." *E.E.O.C. v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014). In applying *Twombly* and *Iqbal* to employment discrimination claims, courts in this Circuit have further held that the elements of a *prima facie* case "provide an outline of what is necessary to render [a plaintiff's employment discrimination] claims for relief plausible." *Sommersett v. City of New York*, No. 09-CV-5916 (LTS) (KNF), 2011 WL 2565301, at *5 (S.D.N.Y. June 28, 2011). Thus, a court must dismiss a claim of employment discrimination if the plaintiff "fail[s] to allege even the basic elements of a discriminatory action claim." *Patane v. Clark*, 508 F.3d 106, 112 n.3 (2d Cir. 2007). Further, "[n]aked assertions of . . . discrimination without any specific factual allegation of a causal link between the defendants' conduct and the plaintiff's protected characteristic are too conclusory to withstand a motion to dismiss." *Sanders-Peay v. NYC Dep't of Educ.*, No. 14-CV-4534 (CBA) (MDG), 2014 WL 6473507, at *3 (E.D.N.Y. Nov. 18, 2014) (internal quotation marks omitted).

Finally, because Plaintiff is proceeding *pro se*, his Complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Nonetheless, a *pro se* litigant must still state a plausible claim for relief. *See, e.g.*, *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013). Thus, the Court's "'duty to liberally construe a plaintiff's complaint is not the equivalent

of a duty to re-write it.'" *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (quoting 2 Moore's Federal Practice § 12.34[1][b], at 12-61).

## DISCUSSION

### A. Plaintiff's Failure-To-Promote and Retaliation Claims

Applying the foregoing standards, two of Plaintiff's claims can be swiftly dismissed. To plead a *prima facie* case for discriminatory failure to promote under either Title VII or the ADEA, "a plaintiff must demonstrate that: 1) he is a member of a protected class; 2) he applied for promotion to a position for which he was qualified; 3) he was rejected for the position; and 4) the employer kept the position open and continued to seek applicants." *Mauro v. S. New England Telecomms., Inc.*, 208 F.3d 384, 386 (2d Cir. 2000). As the plain language of the second requirement makes clear, "[i]n general, a plaintiff who has not applied for a position may not bring a promotion discrimination claim." *Harding v. Wachovia Capital Mkts., LLC*, No. 10-CV-3496 (JPO), 2012 WL 4471543, at *6 (S.D.N.Y. Sept. 21, 2012), *aff'd*, 541 F. App'x 9 (2d Cir. 2013). Here, Plaintiff makes no allegation that he ever applied, either formally or informally, for a promotion. (Nor does he allege that a higher position was available without his knowledge — a circumstance this Circuit has recognized as an exception to the application requirement. *Mauro*, 208 F.3d at 387; *see also Petrosino v. Bell Atl.*, 385 F.3d 210, 227 (2d Cir. 2004).) Insofar as Plaintiff has not "allege[d] facts that allow the court in substance to infer elements of a *prima facie* case" for failure to promote, *King v. U.S. Sec. Assocs., Inc.*, No. 11-CV-4457 (DAB) (MHD), 2012 WL 4122025, at *5 (S.D.N.Y. Aug. 22, 2012), it follows that Plaintiff's claim of discrimination for failure to promote must be dismissed.

Plaintiff's Title VII and ADEA retaliation claims suffer from a similar deficiency. A *prima facie* case of retaliation under either statute requires that a plaintiff show that (1) he

6

engaged in an activity protected by the anti-discrimination statutes; (2) the employer was aware of this activity; (3) the employer took adverse employment action against him; and (4) a causal connection exists between the alleged adverse action and the protected activity.  *See Belton v. City of N.Y.*, No. 12-CV-6346 (JPO), 2014 WL 4798919, at *7 (S.D.N.Y. Sept. 26, 2014); *Fincher v. Depository Trust and Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010).  Plaintiff's claim for retaliation fails at the outset: The Complaint fails to allege that Plaintiff engaged in any protected activity while employed at Morrison & Foerster, which both the ADEA and Title VII define as "oppos[ing] any practice" made unlawful by the statutes or "mak[ing] a charge, testif[ying], assist[ing], or participat[ing] in any manner in a [Title VII or ADEA] investigation, proceeding" or other litigation.  42 U.S.C. § 2000e-3; 29 U.S.C. § 623(d); *see Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 172-73 (2d Cir. 2005).  Thus, Plaintiff's claim for retaliation under Title VII and the ADEA must be dismissed.  The Court turns, then, to Plaintiff's Title VII, ADEA, and state-law claims based on his termination and unequal work conditions.[2]

---

[2]   Defendants argue that Plaintiff's sex-discrimination claim should be summarily dismissed because he failed to file an EEOC charge alleging sex discrimination, and the charges Plaintiff did file were not "reasonably related" to such a claim.  (Defs.' Mem. Law Supp. Mot. To Dismiss Compl. Pursuant Fed. R. Civ. P. 12(b)(6) (Docket No. 20) ("Defs.' Mem.") 7-8).  In order to determine whether a claim is "reasonably related" to those contained in a prior EEOC charge, however, a Court must ask whether "the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made," *Williams v. N.Y. City Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006) (per curiam) (internal quotation marks omitted), an inquiry that focuses "on the factual allegations made in the EEOC charge itself, describing the discriminatory conduct about which a plaintiff is grieving." *Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2003) (internal quotation marks omitted).  In this case, Plaintiff has not attached to his Complaint the EEOC charge itself — only the letter from the EEOC ruling on it (Compl. 10) — so it cannot make such a determination.  In any event, Plaintiff's claims are subject to dismissal for other reasons.

**B. Plaintiff's Title VII and ADEA Claims Based on Adverse Employment Action**

Plaintiff alleges that, during his time working with the SALT group, "it was clear that [his] race, gender, and/or age was a problem for some of the attorneys." (Compl. 8). He alleges that, because of those differences, he was subjected to less favorable employment conditions, including his ultimate termination. (*Id.* at 6-8). In order for his claim of disparate treatment to be actionable under either Title VII or the ADEA, however, Plaintiff must ultimately show that (1) he was a member of a protected group, (2) he was qualified for the position, (3) he experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination. *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 107 (2d Cir. 2010) (ADEA); *Beyer v. Cnty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008) (Title VII). With respect to the third element, "[a]n adverse employment action, for purposes of both the ADEA and Title VII, is more disruptive than a mere inconvenience or an alteration of job responsibilities[,] and can include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 499 (2d Cir. 2009) (internal quotation marks omitted). With respect to the fourth element, dismissal of a complaint is appropriate if the plaintiff fails "to plead any facts that would create an inference that any adverse action taken by any defendant was based upon" the protected characteristic. *Patane*, 508 F.3d at 112.

Plaintiff's complaint alleges that he experienced discrimination because of his race, gender, and age in several respects. First, Plaintiff alleges that he was assigned fewer or less satisfying tasks by several Defendants specifically, and by the SALT group generally. (Compl. 8 ("[Field's] requests of me [were] always limited to adding a document to a binder or updating the

8

SALT dockets"); *id.* at 7 ("Nicole [] Johnson appeared aghast when I told her my age and that I have 4 children . . . After that exchange she made few requests of me"). It is well established, however, that "[s]ubjective dissatisfaction with assignments does not constitute adverse employment action." *Brown v. Snow*, No. 02-CV-7985 (GEL), 2006 WL 623594, at *5 (S.D.N.Y. Mar. 13, 2006) (internal quotation marks omitted), *aff'd sub nom. Brown v. Paulson*, 236 F. App'x 654 (2d Cir. 2007). Indeed, "[a] plaintiff's assigned task, however undesirable it may be, does not constitute an adverse employment action under Title VII if it falls within his or her job responsibilities." *Grant v. N.Y. State Office for People with Developmental Disabilities*, No. 12-CV-4729 (SJF), 2013 WL 3973168, at *7 (E.D.N.Y. July 30, 2013) (quoting *Billingslea v. Ford Motor Co.*, No. 06-CV-0556, 2010 WL 4861500, at *7 (W.D.N.Y. Nov. 30, 2010)). As Plaintiff has failed to "proffer objective indicia of material disadvantage," and "subjective personal disappointment is not enough," *Beyer*, 524 F.3d at 164 (internal quotation marks omitted), Plaintiff's dissatisfaction with the work assigned (or not assigned) to him by his supervisors is insufficient to make out an adverse employment action.

Second, Plaintiff alleges that he suffered an adverse employment action when he was placed on probation "because [he] was 'inefficient' and an 'ineffective' communicator." (Compl. 3). During this probationary period, Plaintiff had to receive approval before working overtime; was assigned to begin and end work a half-hour earlier than usual; and was forced to accept changes in his overall workload, including being deprived of one of his primary tasks — updating and circulating the SALT dockets — which was Plaintiff's "primary interaction with the entire SALT group." (*Id.* at 6-7). Even assuming that Plaintiff has adequately pleaded that his probation constituted an adverse employment action, because it forced Plaintiff to accept "significantly diminished material responsibilities," *Galabya v. N.Y. Bd. of Educ.*, 202 F.3d 636,

9

640 (2d Cir. 2000) (internal quotations omitted), Plaintiff fails to plausibly plead — or indeed, to plead at all — that his probation was imposed under conditions giving rise to an inference of discrimination. In particular, Plaintiff does not allege any facts suggesting that his supervisors' perceptions of his job performance were animated by discriminatory animus. Aside from his allegation that one SALT attorney looked "aghast" when he told her his age (Compl. 7), he does not allege that "defendants[] made any remarks that could be viewed as reflecting discriminatory animus," *Patane*, 508 F.3d at 112 (*see also* Compl. 8 ("[N]o SALT attorney ever used a racial, gender or age slur in my presence . . .")), or that any co-workers with similar job skills, but without his protected characteristics were perceived as more effective employees.

      Plaintiff's Title VII and ADEA claim based on his termination fails for the same reason. Plaintiff himself acknowledges that there were non-discriminatory reasons to account for his termination, stating that "the traffic delay [which caused Plaintiff to be late to work] was management's . . . perceived justification for terminating my employment — it was the final straw." (Compl. 7). And he does not allege *any* facts to indicate that the true reason for his termination was his age, race, or sex; indeed, other than his conclusory assertions that an employee without his characteristics "would have been" treated differently (*id.* at 7), Plaintiff "provides no further detail manifesting any form of racial animus, discriminatory words, prior incidents or other indications that his [protected characteristics] played a role in [Defendants'] decision to dismiss him." *Perry v. Sony Music*, 462 F. Supp. 2d 518, 520 (S.D.N.Y. 2006). Indeed, the only allegation supporting "discrimination [he has] presented is that [he is] African American," over the age of 45, and male. *Pearson v. Bd. of Educ.*, 499 F. Supp. 2d 575, 598 (S.D.N.Y. 2007). The mere fact that Plaintiff is a member of those protected groups is necessary to state a claim under Title VII and the ADEA, but it is plainly insufficient by itself to support an

inference of discrimination *because of* those protected characteristics.  *See Ochei v. The Mary Manning Walsh Nursing Home Co.*, No. 10-CV-2548 (CM) (RLE), 2011 WL 744738, at *3 (S.D.N.Y. Mar. 1, 2011) (finding that the plaintiff's pleading amounted to "I am (fill in the protected class of which the plaintiff is a member); something bad happened to me at work; therefore the bad thing happened because I am (fill in the protected class)," and that this "false syllogism . . . does not support any inference of discrimination.").  Accordingly, Plaintiff's claim of discrimination based on his termination must be dismissed.

B.  **Plaintiff's Title VII and ADEA Claims Based on Hostile Work Environment**

Although not noted by Defendants, Plaintiff's complaint, liberally construed, could be read to assert a hostile work environment claim, in that Plaintiff alleges that he endured discrimination in his everyday interactions with other members of the SALT team.  (Compl. 6-8).  In determining whether an actionable hostile work environment claim exists, a court must look at "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002) (internal quotation marks omitted).  Further, "a plaintiff alleging a hostile work environment claim must also establish that 'the conduct at issue was not merely tinged with offensive connotations, but actually constituted *discrimination because of* [race or another protected category].'"  *Browne v. City Univ. of N.Y.*, 419 F. Supp. 2d 315, 330 (E.D.N.Y. 2005) (partial emphasis added) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80-81 (1998)), *aff'd sub nom. Browne v. Queen's Coll. City Univ. of N.Y.*, 202 F. App'x 523 (2d Cir. 2006).

Here, Plaintiff asserts that his interactions with his co-workers "made [him] constantly aware of the need to appear non-threatening no matter how unfair, abusive, and cynical they might be"; that he was initially not invited to a work social event and — when he was forwarded the invitation — was not "embraced and urged by other SALT group attorneys to attend"; and that Fields "always seemed nervous in [his] presence." (Compl.7-8). As discussed above, however, the Complaint includes no allegations supporting any inference that any supposed rude behavior was on account of Plaintiff's protected characteristics. Because "many bosses are harsh, unjust, and rude," the Second Circuit has made it clear that allegations of mistreatment "lack[ing] a linkage or correlation to the claimed ground of discrimination" cannot form a basis for a valid hostile work environment claim. *Alfano v. Costello*, 294 F.3d 365, 377 (2d Cir. 2002). The only incident that could even remotely be said to establish such a correlation — that one SALT attorney looked "aghast" when he told her his age (Compl. 7) and consequently made fewer requests of him — falls well short of being so "extraordinarily severe . . . to have altered the conditions of [his] working environment." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000); *see also Brown v. Coach Stores, Inc.,* 163 F.3d 706, 713 (2d Cir. 1998) (holding that a supervisor's occasional racist remarks "fail[ed] to constitute discriminatory behavior that is sufficiently severe or pervasive to cause a hostile environment."); *De la Cruz v. City of N.Y.*, 783 F. Supp. 2d 622, 644 (S.D.N.Y. 2011) (concluding that a defendant's "stray remarks regarding [the plaintiff's] seniority and physical fitness (or lack thereof)" did not establish a hostile work environment claim). Accordingly, any claim by Plaintiff that he suffered a hostile work environment must be and is dismissed.

**C. Plaintiff's NYSHRL and NYCHRL Claims**

Finally, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining claims pursuant to Title 28, United States Code, Section 1367. Under that provision, a district court has discretion over whether to exercise jurisdiction over state-law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). The Supreme Court and the Second Circuit have made clear, however, that, as a general rule, "when the federal claims are dismissed the 'state claims should be dismissed as well.'" *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). Here, there is no basis to depart from that general rule. Given the relatively early state of the case, the traditional "values of judicial economy, convenience, fairness, and comity" that the Court must consider, *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988), do not counsel in favor of exercising jurisdiction. Accordingly, Plaintiff's remaining claims are dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. Further, while leave to amend a complaint should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), it is "within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). Although courts should generally grant *pro se* plaintiffs leave to amend "at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated," *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (per curiam) (internal quotation marks omitted), the Court declines to grant such leave *sua sponte* in this case. Tellingly, Plaintiff was previously

granted leave to amend his complaint to cure deficiencies raised in Defendants' motion to dismiss (Docket No. 17) — an opportunity Plaintiff did not take — and he "has not requested permission to file a[n] Amended Complaint, nor has he given any indication that he is in possession of facts that would cure the problems" identified in the instant motion to dismiss. *Clark v. Kitt*, No. 12-CV-8061 (CS), 2014 WL 4054284, at *15 (S.D.N.Y. Aug. 15, 2014).[3]  As "Plaintiff's failure to fix deficiencies in his previous pleadings is alone sufficient ground to deny leave to amend *sua sponte*," the Court declines to grant such leave here.  *Transeo S.A.R.L. v. Bessemer Venture Partners VI L.P.*, 936 F. Supp. 2d 376, 415 (S.D.N.Y. 2013)

The Clerk of Court is directed to terminate Docket No. 18 and to close the case.

SO ORDERED.

Date: February 26, 2015
New York, New York

JESSE M. FURMAN
United States District Judge

---

[3]  In fact, in his submission in opposition to Defendants' motion, Plaintiff concedes that his claims "cannot be reasonably substantiated" without discovery. (Pl's Affirmation Opp'n Mot. (Docket No. 21) 1).  Of course, Plaintiff is not entitled to discovery in the absence of a legally sufficient complaint.  *See, e.g.*, *Iqbal*, 556 U.S. at 678-79 ("Rule 8 [of the Federal Rules of Civil Procedure] . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").